# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGGORY A. LYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-CV-596-GKF-TLW |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge T. Lane Wilson on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #22] and the Objections thereto filed by plaintiff, Greggory A. Lynn ("Lynn"). [Dkt. #23]. The Magistrate Judge recommended the Commissioner's decision be affirmed. Lynn objects to the Magistrate Judge's Report and Recommendation, arguing (1) the Magistrate Judge failed to weigh properly an informal RFC form from Lynn's treating physician submitted three days after the hearing, (2) the ALJ failed to include several limitations in the RFC, including vision, numbness in the fingers, difficulty walking, and difficulty reaching, (3) the ALJ did not adequately investigate whether there were "significant" numbers of jobs available to Lynn, and (4) the ALJ failed to link his assessment of Lynn's credibility to specific evidence. For the reasons below, the court adopts the Magistrate Judge's recommendation and affirms the Commissioner's decision denying benefits.

## I. Procedural History

Lynn filed her applications for supplemental security income and disability benefits on September 14, 2010. [Dkt. #13-5, pp. 2-10]. The Social Security Administration denied the applications initially and on reconsideration. [Dkt. #13-4, pp. 2-9, 17-22]. ALJ Lantz McClain held an administrative hearing on January 6, 2012. [Dkt. #13-2, p. 35 *et seq.*]. By decision dated February 21, 2012, the ALJ found that Lynn was not disabled. [*Id*. at 17-34]. On July 9, 2013, the Appeals Council denied review. [*Id*. at 2-7]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a *de novo* review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a

different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

Lynn cites *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) several times as the basis for a harmless error review standard. Specifically, *Allen* held that, where an ALJ has failed to make a required finding, a reviewing court may

> supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. *Id.*

The court notes *Allen* applies only when the ALJ has failed to make a dispositive finding. Lynn often cites *Allen* as though it provides the standard of review even where the ALJ has made a dispositive finding. [*See, e.g.*, Dkt. #23, p. 7 ("A reasonable ALJ would have properly considered and evaluated all of Claimant's impairments, and could have decided the case differently. [citing *Allen*]")]. In so doing, Lynn misreads *Allen*, which does not change the standard for judicial review of the ALJ's findings. As noted above, such findings must be supported by substantial evidence. Whether another factfinder might have reached a different result is irrelevant.

### III. New Medical Evidence

Lynn argues the Appeals Council did not consider new medical evidence submitted three days after the hearing. As noted above, the administrative hearing before the ALJ took place on January 6, 2012. On January 9, 2012, Dr. Joshua Livingston, Lynn's treating physician, filled out an informal RFC form, which was then submitted to the Commissioner. [Dkt. #13-7, pp. 277-81].

The Appeals Council must consider additional evidence that is new, relevant, and material, but is not required to discuss the evidence in detail in a denial letter. Lynn cites two cases from the Tenth Circuit requiring the Appeals Council to consider additional evidence that is new, material, and related to the relevant time period. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004); *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). Yet the Appeals Council is not required to describe the evidence in detail in a denial letter, as long as it is clear that the Appeals Council reviewed the evidence. *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). The facts of *Martinez* closely parallel this case. In *Martinez*, new evidence was submitted to the Appeals Council. *Id*. The Council stated in the denial letter that it "considered the . . . additional evidence identified on the attached Order of the Appeals Council." *Id*. The relevant evidence was identified on the Order of the Appeals Council. *Id*. The court concluded that the Appeals Council adequately considered the additional evidence. *Id*.

In this case, Lynn submitted new evidence for review by the Appeals Council. The Council stated in the denial letter that it "considered the . . . additional evidence listed on the attached Order of the Appeals Council." [Dkt. #13-2, p. 2]. The new informal RFC form was identified on the Order of the Appeals Council. [*Id*. at 6]. This court follows the Tenth Circuit in concluding the Appeals Council adequately considered the additional evidence.

The Magistrate Judge also considered the new evidence and weighed it against the rest of the record to determine whether the ALJ's conclusions were still based on substantial evidence. The Magistrate Judge concluded the new evidence was inconsistent with Dr. Livingston's own treatment notes, already in the record, and with the rest of the medical evidence, and thus insufficient to overturn the ALJ's decision. Lynn argues the Magistrate Judge showed insufficient deference to the new RFC form, especially because it was prepared by a treating

source, Dr. Joshua Livinston. Specifically, Lynn argues the Magistrate Judge did not apply the analysis required by *Goatcher v. Shalala*, 52 F.3d 288, 290 (10th Cir. 1995). In *Goatcher* the court explained that a treating physician's opinion should be weighed against other medical evidence to determine whether the other evidence outweighs the treating physician's report, "not the other way around." *Id.* (citing *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).

*Goatcher* does not dictate a different analysis or result in this case. In *Goatcher*, the court compared a treating source opinion with other medical evidence. *Id.* By contrast, the Magistrate Judge compared the treating source informal RFC with the treatment notes *of the same treating source*. The Magistrate Judge resolved a conflict between Dr. Livingston's treatment notes and the informal RFC form by considering the rest of the medical evidence. This analysis is consistent with governing regulations. *See* 20 C.F.R. § 404.1527(c)(2)-(6). There was no error in the Magistrate Judge's analysis. Lynn's objection is overruled.

### IV. Limitations in RFC

Lynn identifies four limitations he argues the ALJ should have included in the RFC and hypothetical. As Lynn notes, the ALJ must consider all impairments documented in the record and make it clear to reviewers how he arrived at his conclusions. *See Carpenter v. Astrue*, 350 F.3d 1264, 1265-66 (10th Cir. 2008); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

First, Lynn argues the ALJ should have included vision problems, including diabetic retinopathy, blurriness, and double vision in the RFC and hypothetical. Lynn notes the examining ophthalmologist diagnosed background diabetic retinopathy and trace nuclear sclerosis in both eyes. [Dkt. #13-7, p. 12]. This is irrelevant, given that neither condition represents a current, as opposed to a potential, impairment of vision. "Visual symptoms generally do not occur in the early stages of" background diabetic retinopathy, also known as

"nonproliferative retinopathy." "Nonproliferative Retinopathy," *The Merck Manual of Diagnosis and Therapy*, 724, (Beers & Berkow, eds. 1999). The medical evidence shows that Lynn has not lost his vision, but that "if he does not get his diabetes under control," he "*could* develop diabetic retinopathy and lose his vision." [Dkt. #13-7, p. 225]. This is consistent with the rest of the ophthalmologist's report, which noted a normal field of vision, corrected vision of 20/30 for near objects, 20/30 for distance objects in the left eye, and 20/40 for distance objects in the right eye. [Dkt. #13-7, p. 12].

Lynn testified he experiences double or blurred vision. The ALJ noted this testimony, and found that Lynn's impairments could reasonably be expected to cause the symptoms alleged in Lynn's testimony. [Dkt. #13-2, p. 24]. However, the ALJ found Lynn's testimony regarding the intensity, persistence, and limiting effects of the vision and other symptoms not credible. [*Id.*]. The ALJ discussed the impairment of diabetes in the RFC and discussed the symptoms supported in the medical evidence. That discussion included one incident in which Lynn was hospitalized based on complaints of blurred or double vision, like "a kaleidoscope [e]ffect," as a result of a blood sugar spike. [Dkt. #13-7, p. 225]. Lynn received diabetes medications and was released later that day "in good condition." [*Id.* at p. 226]. The ALJ's RFC narrative did not contain any further discussion of double or blurred vision. Contrary to Lynn's argument, no further discussion was required. The ALJ's reasoning is clear in the decision. He considered the impairment of diabetes, and, as the Magistrate Judge correctly noted, the double or blurred vision Lynn alleged in his testimony does not qualify as a separate impairment. Thus, the ALJ considered all impairments documented in the record.

Lynn also argues the ALJ should have conducted an analysis under *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985), which governs denials of benefits for noncompliance with

treatment of an otherwise disabling impairment. *Teter* does not apply in this case. The ALJ found Lynn's testimony as to the intensity, persistence, and limiting impact of the alleged double or blurred vision to be not credible. Lynn may occasionally experience blurred or double vision as a result of his uncontrolled diabetes, and there is some evidence in the record that Lynn is often noncompliant with his prescribed treatment for diabetes. [*See* Dkt. #13-7, p. 272]. However, under the ALJ's reasoning, Lynn does not qualify for disability because the medical evidence does not show that the vision problems rise to the level of an impairment, not because Lynn had an impairment that he failed to control with prescribed treatment. Thus, *Teter* does not apply.

Lynn also argues the vocational expert ("VE") testified that blurred or double vision lasting "about an hour" each day would preclude employment. The transcript is not clear on this point. At the hearing Lynn's counsel asked the VE whether Lynn's vision problems, had they been included in the RFC, would preclude employment. [Dkt. #13-2, pp. 56-58]. The VE asked for clarification as to the nature of the vision problem. Lynn's counsel then examined Lynn briefly, who testified that he experiences blurred or double vision "pretty much most of the day," and "mostly all day." [*Id.*]. Counsel then asked whether Lynn experienced double or blurred vision for at least an hour on a normal day between "8:00 and 5:00." [*Id.*]. Lynn responded, "About more than an hour." [*Id.*]. Following Lynn's testimony, the VE said, "Yeah, I think I can go with that. I would just say that, based on your hypothetical, the person's visual problems would preclude them from maintaining employment." [*Id.*]. Thus, it is unclear from the transcript whether the VE meant that an hour of blurred or double vision a day would preclude employment or whether the preclusive limitation was blurred or double vision "mostly all day," as Lynn testified.

7

Second, Lynn disagrees with the ALJs' conclusion that the medical evidence does not support Lynn's testimony of numbness in his fingers. Lynn cites to two medical records that indicate diagnoses of, *inter alia*, diabetic neuropathy and joint pain. [Dkt. #13-7, pp. 3, 225]. And yet neither record connects those diagnoses to any numbness or sensitivity problems in the fingers. The first record, which notes both diabetic neuropathy and join pain, also notes that Lynn has "grip strength" rated at "5/5," and that Lynn was "able to pick up and manipulate paperclips without difficulty." [Dkt. #13-7, p. 3]. The second record clarifies that Lynn's diabetic neuropathy manifests in his feet. [Dkt. #13-7, p. 225 ("he already has got diabetic neuropathy in his feet . . .")]. Lynn's objection does not disturb the ALJ's conclusion on this point.

Third, Lynn argues the ALJ did not include adequate limitations in the RFC to account for some of the specific statements in the medical evidence regarding Lynn's ability to walk, use of a cane, *etc*. The Magistrate Judge noted that the ALJ accounted for these issues by limiting Lynn to sedentary work. Lynn's current argument is essentially a request that the court reweigh the evidence. Because there is substantial evidence supporting the RFC, such a reweighing would be improper. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency") (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

Fourth, Lynn argues the ALJ failed to assess any limitation based on the finding that Lynn has reduced range of motion in the right shoulder. This argument is unpersuasive. The RFC contains a limitation that Lynn must avoid working above the shoulder level. [Dkt. #13-2, p. 23]. The narrative discussion supporting the RFC includes Dr. Joel Hopper's finding that Lynn's "right shoulder range of motion was impaired by pain." [*Id.*; Dkt. #13-7, p. 3].

In sum, the ALJ was not required to discuss Lynn's alleged vision and manipulation problems in the RFC or in the hypothetical. And the ALJ adequately discussed and accounted for Lynn's mobility and shoulder range of motion. Lynn's objection is overruled.

### V. Job Availability

Lynn argues the ALJ failed to conduct analysis as to whether the jobs cited by the VE exist in significant numbers. A total of 700 of those jobs were available in Oklahoma.

The ALJ was required to determine whether Lynn could engage in "any other kind of substantial gainful work which exists in the national economy," meaning work that exists "in significant numbers either in the region where such individual lives or in several regions of the country." *See* 42 U.S.C. § 423(d)(2)(A). There is no magic number that amounts to "significant numbers" of jobs. *See Trimiar* at 1330. ALJs are to consider many criteria, "some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id*. (quoting *Jensen v. Bowen*, 861 F.2d 272, 275 (8th Cir. 1988)). The court in *Trimiar* did not hold, as Lynn argues, that VE testimony of 650-900 jobs triggers some additional analysis above and beyond the normal analysis for determining whether there are "significant numbers" of jobs. In *Trimiar*, the court found the ALJ had considered the appropriate factors and affirmed the denial of disability based on the availability of 650-900 jobs in the region. *Id*. at 1330-31. By contrast, where an ALJ had not considered the appropriate factors and the VE's testimony only produced 100 relevant jobs, the court remanded for a case-specific analysis. *See Allen v. Barnhart*, 357 F.3d 1140, 1144-46 (10th Cir. 2004). A failure to conduct a case-specific analysis where relatively few jobs were available locally does not require remand, as long as there are

9

significant numbers of jobs available nationally. *Botello v. Astrue*, 376 F.App'x 847, 850-51 (10th Cir. 2010) ("we can uphold the ALJ's significant numbers ruling based solely on the numbers of jobs that the VE identified as being available in the national economy.") (following the reasoning of *Raymond v. Astrue*, 356 F.App'x 173, 178 n. 2 (10th Cir. 2009)).

Here the ALJ clearly considered the level of Lynn's disability in the RFC narrative. Lynn's counsel raised no objection to the qualifications of the vocational expert during the hearing. [Dkt. #13-2, p. 54]. The ALJ also considered the type and nature of each job. [*See, e.g.*, Dkt. #13-2, p. 55 (ALJ and VE discuss exact nature of "tube operator" position and its availability at Walmart and other department stores)]. The ALJ considered Lynn's ability to drive during daytime and at night. [*Id.* at p. 27]. The VE testified that there were 69,700 of the same jobs available nationally. The ALJ's consideration of whether the jobs proposed by the VE exist in significant numbers was sufficient, and significant numbers of the same jobs exist at the national level. No additional analysis was required by the ALJ. Lynn's objection is overruled.

## VI. Credibility Assessment

Finally, Lynn argues the ALJ failed properly to determine Lynn's credibility. Credibility determinations are "peculiarly the province of the finder of fact," in this case, the ALJ. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). When making credibility determinations, ALJs may consider a number of factors, including:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ need not consider all of these factors in each case, as long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Porter v. Colvin*, 525 F.App'x

760, 764 (10th Cir. 2013) (unpublished) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The specific reasons articulated by the ALJ "should be closely and affirmatively linked to substantial evidence," may not simply recite the factors that are described in the regulations, and should be more than a conclusion dressed up "in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).

The ALJ spent nearly two full pages of his decision weighing Lynn's statements for internal consistency and for consistency with the medical evidence. [Dkt. #13-2, pp. 27-29]. Lynn's argument that the inclusion of the words "other reasons" in part of the ALJ's credibility analysis was "disfavored boilerplate" is not persuasive. The relevant section from the ALJ's decision is: "it is difficult to attribute [Lynn's alleged limitations] to [Lynn's] medical condition, as opposed to other reasons." [Dkt. #13-2, p. 27]. The ALJ did not, as Lynn's argument suggests, forego a proper credibility determination on the basis of a vague reference to "other reasons." Rather, the ALJ merely noted, in the course of a fulsome credibility analysis, that the medical evidence could not fully explain Lynn's alleged restrictions in the activities of daily living. [*Id.*].

As the Magistrate Judge explained, Lynn essentially asks the court to reweigh the evidence the ALJ considered when assessing Lynn's credibility, which is improper. *See White*, 287 F.3d at 905. The ALJ's credibility assessment was sufficient, and Lynn's objection is overruled.

### VIII. Conclusion

For the reasons set forth above, Lynn's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #23] are overruled, the Magistrate Judge's Report and Recommendation [Dkt. #22] is adopted, and the decision of the Commissioner is affirmed.

ENTERED this 6th day of March, 2015.

                                                GREGORY K. FRIZZELL, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT